```
              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

EPIC SYSTEMS CORPORATION,      §
                               §
        Plaintiff,             §
                               §
VS.                            §   NO. 4:02-CV-161-A
                               §
ALLCARE HEALTH MANAGEMENT      §
SYSTEM, INC.,                  §
                               §
        Defendant.             §
```

### MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the cross-motions of plaintiff, Epic Systems Corporation, and defendant, Allcare Health Management System, Inc., for summary judgment. The court, having considered the motions, the responses, the replies, the record, the summary judgment evidence, and applicable authorities, finds that plaintiff's motion should be granted in part, as set forth herein, and that defendant's motion should be denied.

### I.

### Plaintiff's Claims

On February 21, 2002, plaintiff filed its original complaint in this action. Plaintiff alleges:

On or about August 6, 1999, plaintiff and defendant entered into a license agreement pursuant to which plaintiff pays annual royalties and additional royalties to defendant for a nonexclusive, nontransferable, limited license under U.S. Patent No. 5,301,105 (the "patent"). The license agreement contains a



"most favored nations" provision pursuant to which plaintiff may substitute the financial terms of any license that defendant grants to any third parties in the same field of use as plaintiff if those terms are more favorable than the financial terms in the license agreement between plaintiff and defendant. Defendant has entered into other license agreements with third parties in the same field of use as plaintiff that contain financial terms that are more favorable to those third-party licensees than are the terms between plaintiff and defendant. Plaintiff has requested, but defendant has refused to provide, information regarding all licenses defendant has entered into with third parties in the same field of use as plaintiff. Defendant did provide information that the financial terms in a license granted to MedicaLogic are more favorable than those granted to plaintiff.  On October 30, 2001, plaintiff exercised its right to substitute the financial terms in the license agreement with the financial terms provided by defendant to MedicaLogic, but defendant has refused to honor the exercise of plaintiff's rights.

Plaintiff seeks a declaratory judgment that (1) it has the right to substitute more beneficial financial terms in any of the licenses defendant has entered into with third parties in the same field of use, and (2) all amounts it has paid to defendant under the license agreement to date be applied against any amounts that would be due if more favorable financial terms were substituted.  Plaintiff also asserts a claim for breach of

2

contract arising out of defendant's failure to comply with the terms of the license agreement, and seeks to recover its costs and attorney's fees.

II.

## Grounds of the Motions

Plaintiff seeks judgment that its interpretation of the "most favored nations" provision is the correct one. Specifically, plaintiff says that it is entitled to substitute a paid-up license for its running royalty payments. And, it says that it is entitled to an offset on its lump-sum payment for fees previously paid to defendant. Plaintiff additionally urges that it is entitled to judgment on its breach of contract claim, and corresponding request for attorney's fees.

Defendant, on the other hand, urges that plaintiff is not entitled to substitute the terms of any of the allegedly more favorable license agreements to which it refers, because the "most favored nations" provision limits substitution to similar running royalties.[1] Moreover, an exception to the "most favored nations" provision applies to prevent the substitution of terms. And, defendant urges that it did not breach the contract and that, in any event, plaintiff would not be entitled to an offset for amounts already paid pursuant to the license agreement.

---

[1] Defendant does not argue that it did not enter into license agreements with similarly situated licensees on more favorable terms than those given to plaintiff. It simply argues that plaintiff cannot substitute the terms of a paid-up license for the running royalty arrangement it chose.

3

III.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution

could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597.

IV.

Undisputed Evidence

The following is an overview of evidence pertinent to the motions for summary judgment that is undisputed in the summary judgment record:

The license agreement provides, in pertinent part:

> 7.   Entire Agreement
>
> This Agreement (including any rider, exhibits and schedules which are attached hereto and made a part hereof by this reference), constitutes the entire understanding between the parties with respect to the subject matter hereof and supersedes any and all prior and contemporaneous promises, agreements and understandings between them, whether written or oral. There are no terms, obligations, covenants, representations, statements or conditions other than those contained herein. No agreements altering or supplementing the terms hereof may be made except by means of a written document signed by the duly authorized representatives of the parties.

Pl.'s App. at 0091. Further,

> 1.   Most-Favored Nations
>
> a.   If after the Effective Date, Licensor shall enter into a License Agreement with any third party in the

5

>   same Field of Use as Licensee ("Third Party License"
>   and "Third Party Licensee", respectively) on financial
>   terms that are more favorable to such Third Party
>   Licensee than the financial terms set forth in this
>   Agreement, Licensee shall be entitled to substitute
>   the financial terms of such Third Party License for
>   the counterpart or equivalent terms herein, provided
>   that this License Agreement has been in effect
>   continuously since the Effective Date and provided
>   further that all such financial terms in such Third
>   Party License are more favorable to the Third Party
>   Licensee than the counterpart or equivalent terms in
>   the License Agreement are to Licensee hereunder.  If
>   less than all financial terms in such Third Party
>   License are more favorable, Licensee shall be entitled
>   to substitute the more favorable terms for the
>   counterpart or equivalent terms in this Agreement, if
>   Licensee also substitutes those terms which are not
>   more favorable.  The foregoing terms notwithstanding,
>   this provision shall not apply with respect to any
>   Third Party License: (i) to a U.S. government agency
>   or health care program such as HCFA, DOD, VA or
>   Medicare, or (ii) which relates to, in whole or in
>   part, the sale or provision of equipment, goods or
>   services to, for, or by any such agency or program.
>
>   b.   For purposes of [the preceding paragraph], the
>   "financial terms" shall be construed to mean the
>   following paragraphs of the Agreement:  Paragraphs A-
>   3.3, A-3.6 of Exhibit A of the Agreement, and
>   Paragraphs R-1.1, R-1.2, R-3.6 of this Rider.

Id. at 0094.  Paragraph A-3.3 is titled "Annual Royalty Payments" and includes the formula pursuant to which annual royalties are determined.  See id. at 0087-88.  Paragraph A-3.6 is titled "Royalty for Licensee's Customers" and contains the formula for determining the royalty to be paid on behalf of plaintiff's customers.  Id. at 0088.  Paragraph R-1.1 and R-1.2 also concern annual royalty payments, specifically, a cap for the initial and subsequent extended terms and the maximum and minimum annual royalties to be paid.  Id. at 0093.  Paragraph R-3.6 is titled "Royalty for Licensee's Customers" and reduces the

6

royalty rate provided in Paragraph A-3.6 to two percent. <u>Id.</u> at 0094.

Plaintiff was one of the first healthcare software providers to enter into a license agreement with defendant. In June 1999, defendant filed suit against twelve companies, alleging infringement of the patent. MedicaLogic, Inc., was one of the defendants in that action. Plaintiff was not sued, because it was negotiating with defendant for a license. Its license agreement became effective August 6, 1999, and included the "most favored nations" provision so that plaintiff could take advantage of any more favorable terms subsequently granted to another licensee in plaintiff's field of use.

In mid-December 1999, a consultant for both plaintiff and defendant informed plaintiff that defendant had entered into a settlement agreement with MedicaLogic, granting MedicaLogic and its customers a nonexclusive paid-up license for $350,000.00. MedicaLogic was a competitor of plaintiff's and was in the same "field of use." Plaintiff demanded that defendant disclose the terms of the MedicaLogic license in order to verify that it included more favorable financial terms than those provided to plaintiff. Defendant refused to provide the information. By letter dated October 30, 2001, plaintiff stated that it was exercising its right under the "most favored nations" clause to substitute the financial terms of the MedicaLogic license for the terms of its own agreement. Plaintiff enclosed a check in the amount of $145,920.00, the difference between the

$350,000.00 paid by MedicaLogic for a paid-up license and the sums previously paid by plaintiff to defendant as royalty fees prior to that date. Pl.'s App. at 0008-0009. Defendant refused to honor the demand and returned the check to plaintiff.

In 2000, plaintiff filed another lawsuit alleging infringement of the patent by other companies. The defendants in the second lawsuit included Argus Health Systems, Inc., ("Argus"), Consultec, L.L.C., ("Consultec") and Oacis Healthcare Systems, Inc., ("Oacis"). Oacis, Consultec, and Argus are in the same "field of use" as plaintiff and paid defendant lump sums for paid-up licenses for themselves and their customers. Information provided by defendant after this action was filed shows that it entered into such a license agreement with Oacis for $175,000.00, effective April 21, 2000; with Argus for $225,000.00 effective March 7, 2001; and, with Consultec for $325,000.00 effective February 9, 2001; and, the information confirmed such a license with MedicaLogic for $350,000.00 effective December 14, 1999.[2]

To date, plaintiff has paid defendant $538,295.88 in royalties, plus another $197,406.14 to an escrow account pending resolution of this action.[3]

---

[2] A part of some or all of the amounts specified appear to represent compensation to defendant for past infringement.

[3] After the commencement of this action, the parties apparently agreed that plaintiff would make its royalty payments to an escrow account instead of paying defendant.

8

V.

## Law Applied to the Facts

The parties seem to be in agreement that Texas substantive law governs in this diversity action. They agree on the basic rules governing interpretation of contracts, including the license agreement: Under Texas law, courts must enforce unambiguous agreements as written. Sun Oil Co. v. Madeley, 626 S.W.2d 726, 728 (Tex. 1981). The court determines the parties' intent from the four corners of the written contract. National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (1995); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). The court may construe the contract in light of the surrounding circumstances in which the contract was executed. Sun Oil Co., 626 S.W.2d at 731. Words are to be given their plain grammatical meaning unless it definitely appears that the intent of the parties would thereby be defeated. Reilly v. Ranger's Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). The court will attempt to harmonize and give effect to all provisions so that none are rendered meaningless. Ogden v. Dickenson State Bank, 662 S.W.2d 330, 332 (Tex. 1983). The mere fact that the parties disagree as to the meaning of the contract or urge different interpretations does not mean that the contract is ambiguous. Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). For ambiguity to exist, the interpretation urged by each party must be reasonable. Id.

Applying the foregoing rules of construction, the court concludes that the license agreement is not ambiguous. The interpretation urged by plaintiff is the only reasonable interpretation, because defendant's interpretation would render the "most favored nations" clause meaningless.

The license agreement entitles plaintiff "to substitute the financial terms of such Third Party License for the counterpart or equivalent terms herein." Pl.'s App. at 0094. Counterpart terms would be the same terms, i.e., "running royalties." Equivalent terms would encompass lump sum or paid-up royalties. As other courts interpreting "most favored nations" clauses have held, there is no distinction between one who makes an up-front, lump-sum payment and one who makes continuing royalty payments. See Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc., 105 F.3d 629, 633 (Fed. Cir. 1997); Cardinal of Adrian, Inc. v. Amerock Corp., 208 U.S.P.Q. 822, 823 (E.D. Mich. 1979). The purpose of a "most favored nations" clause is to guarantee that no other licensee will be given the opportunity to use the patent at a more favorable rate. Cardinal of Adrian, 208 U.S.P.Q. at 823. The purpose would be defeated if the contract were limited as defendant urges. Had the parties intended to exclude lump-sum payments from the comparison, they could have done so.[4] The court does not read the definition of "financial

---

[4]The court does not interpret paragraph 7, titled "Payments," of the license agreement between plaintiff and defendant to limit the substitution of terms. Paragraph 7.b., providing for "Other Payments," says that "[d]uring the
(continued...)

10

terms" to limit the application of the "most favored nations" provision. Rather, the definition merely identifies the financial provisions of the license agreement that would be affected by a substitution of terms. This is consistent with the language of the "most favored nations" provision allowing substitution of terms even if less than all the terms are more favorable, as long as the less favorable terms are also substituted. For example, a similarly situated licensee might have an agreement pursuant to which royalty payments might be more favorable and the royalty for customers less favorable, but substitution would be allowed as long as all terms were substituted.[5]

In a further attempt to avoid liability, defendant argues that the "most favored nations" provision does not apply to any of the third-party licenses to which plaintiff refers because each of them "relates to, in whole or in part, the sale or provision of equipment, goods or services to, for or by [a U.S. government agency or program]." Def.'s Consol. Br. at 8-9. In support of this contention, defendant relies upon hearsay and

---

[4](...continued)
remainder of the Term, Licensee shall make payments to Licensor of an Annual Royalty when and as set forth in the Standard Terms and Conditions." Pl.'s App. at 0085. "Annual Royalty Payments" are the subject of paragraph A-3.3, which is one of the paragraphs included in the definition of terms for which substitution is allowed pursuant to the "most favored nations" provision.

[5]Here, there is no contention that any of the terms of the licenses between defendant and any third party similarly situated to plaintiff are less favorable than those in the license agreement between plaintiff and defendant.

11

speculation. See Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976) (evidence inadmissible at trial cannot be used to avoid summary judgment). In any event, to allow defendant to go searching for any relationship whatever between a licensee and a government agency or program to call into effect the exception to application of the "most favored nations" provision would vitiate the purpose of the provision. In other words, the exception would be allowed to swallow the rule. The more reasonable interpretation of the exception is that it should apply where defendant has granted some sort of discount to a licensee because of the fact that that entity is or provides equipment, goods or services to, a governmental agency or healthcare program. Certainly, defendant would know whether such a concession had been made and would not be urging a need for "third party discovery on the issue." Def.'s Consol. Br. at 9. Thus, the court is not persuaded that there is evidence that the exception applies.

As for plaintiff's second cause of action, there is really no dispute that if the contract is interpreted as plaintiff urges, defendant breached the contract by failing to timely provide necessary information so that plaintiff could determine whether more favorable financial terms had been granted to other licensees. Although the license agreement does not specifically provide that defendant must notify plaintiff upon entering into a license agreement with a third party upon more favorable financial terms, such an obligation is implicit. Otherwise, if

12

defendant could hide such information, the "most favored nations" provision would be rendered nugatory. Moreover, defendant breached the contract by failing to allow plaintiff to exercise its rights under the "most favored nations" provision to substitute more favorable financial terms. That any of the lump sums paid by other licensees may have included payment of past damages for infringement does not support defendant's position. That would simply mean that third-party licenses were granted on even more favorable terms. In other words, it would be to plaintiff's benefit to argue that the licenses were worth less than the amounts paid in settlement, but plaintiff is willing to accept that the entire amount paid by each of the third-party licensees was for the license for such third-party licensee and its customers.

Finally, plaintiff seeks a credit for the royalties it has already paid under the license agreement. Defendant argues that there is no entitlement to an offset, since plaintiff has never tendered the full lump-sum amount paid by any other licensee. The license agreement, however, does not provide a mechanism for the substitution of terms.

The court has concluded that defendant is entitled to an offset, but not as large as it contends. The summary judgment record reflects that, although plaintiff gave notice in January of 2000 that it believed MedicaLogic had been granted more favorable license terms and that it was entitled to substitute those terms, it was not until October 30, 2001, that plaintiff

13

gave formal notice that it was exercising its rights under the "most favored nations" provision to substitute the financial terms in the agreement with MedicaLogic for those in the agreement between plaintiff and defendant. Pl.'s App. at 0008. Accordingly, that date should be the one used to determine the amount due. The court agrees with the holdings of cases cited by the parties that a licensee is not entitled to credit for royalty payments made prior to the making of an election. Rothstein v. Atlanta Paper Co., 321 F.2d 90, 96 (5th Cir. 1963); Harley C. Loney Co. v. Mills, 205 F.2d 219, 221 (7th Cir. 1953); Cadillac Prods., Inc. v. TriEnda Corp., 2000 WL 1279163, *4 (E.D. Mich. 2000).

Thus, plaintiff is entitled to a paid-up license effective October 30, 2001, in exchange for the same lump sum as paid by MedicaLogic, less the total of royalties defendant paid after October 30, 2001. Also, plaintiff is entitled to recover from defendant any excess over $350,000 it paid as royalties after October 30, 2001.

Plaintiff is also entitled to recover damages on its breach of contract claim.[6] The court is satisfied that the damages should be the license fees paid between the date defendant refused to provide plaintiff with the terms of the license

---

[6] As damages for plaintiff's breach of contract claim, plaintiff is entitled to recover royalties it paid in ignorance of its rights as a result of the failure of defendant to give notice that it had granted other licenses on more favorable terms. St. Joseph Iron Works v. Farmers Mfg. Co., 106 F.2d 294, 299 (4th Cir. 1939).

agreement made with MedicaLogic so that plaintiff could elect to substitute the more favorable financial terms and the date when plaintiff made known its election to substitute terms. St. Joseph Iron Works v. Farmers Mfg. Co., 106 F.2d 294, 299 (4th Cir. 1939). The summary judgment evidence establishes that the date of demand for information was January 4, 2000. Pl.'s App. at 0006.

Pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 1997), plaintiff is entitled to recover its reasonable attorney's fees.

## VI.

## O R D E R

For the reasons discussed herein,

The court ORDERS that plaintiff's motion for summary judgment be, and is hereby, granted to the extent provided by this order, and that defendant's motion for summary judgment be, and is hereby, denied.

The court further ORDERS and DECLARES that:

(1) Plaintiff is entitled to exercise and has exercised the "most favored nations" provision of the license agreement to substitute for the financial terms of the license agreement between plaintiff and defendant the financial terms of the settlement agreement between defendant and MedicaLogic.

(2) Plaintiff has a fully paid-up license from defendant effective October 30, 2001, for the sum of $350,000.

       The terms of such paid-up license shall be the same as the August 6, 1999, license agreement between plaintiff and defendant, except that all references in such license agreement to annual, periodic, or running royalty payments are replaced by a provision to the effect that the only royalty payment to be made by plaintiff to defendant for the license is the sum of $350,000.  Defendant shall give plaintiff a credit on such $350,000 in the amount of all sums plaintiff paid to defendant as royalty fees under the license agreement, including any funds held in escrow, after October 30, 2001.

(3) Plaintiff have and recover from defendant as damages for its breach of contract all sums paid by plaintiff to defendant as royalty fees under the license agreement between them for the period from January 4, 2000, to October 30, 2001, and plaintiff have and recover from defendant all amounts paid by plaintiff to defendant as royalty fees under their license agreement after October 30, 2001, in excess of $350,000 (which defendant is entitled to keep for the paid-up license as discussed herein).

(4) Plaintiff is entitled to exercise in the future the "most favored nations" provision to substitute in the license agreement between plaintiff and defendant the financial terms of any more favorable license

        agreement between defendant and any other licensee, such as the April 21, 2000, agreement to which defendant and Oacis are parties.

(5) Plaintiff is entitled to recover its reasonable and necessary attorneys' fees from defendant. If the parties are unable to otherwise agree, plaintiff shall file by 4:30 p.m. on September 16, 2002, an appropriate motion supported by declaration or affidavit giving (a) a description of each item of work performed, (b) the date on which each item of work was performed, (c) the identity of the attorney who performed each item of work, (d) the amount of time devoted by each attorney to performance of each item of work, (e) the hourly rate charged by each attorney performing work, (f) an itemization of other expenses incurred, and (g) any other matter plaintiff wishes the court to consider on the issue of attorney's fees to be awarded; and defendant shall file by 4:30 p.m. on September 23, 2002, its response to such motion.

    The court would think that the parties will be able to agree on the dollar amounts of the damages and refund to be awarded pursuant to paragraph 3 above. Therefore,

    The court further ORDERS that the parties either (a) file by 4:30 p.m. on September 23, 2002, their agreed statement as to dollar amounts of the damages and refund so that the court can

prepare a final judgment consistent with the rulings in this memorandum opinion and order once the dollar amount of attorneys' fees has been determined or (b) if the parties cannot reach agreement, the parties so advise the court by 4:30 p.m. on September 23, 2002, that further proceedings can be scheduled on the issues of dollar amounts of damages and refund.

    SIGNED September __11__, 2002.

                                      JOHN McBRYDE
                                      United States District Judge